**1028**

Jess CANCINO
v.
The UNITED STATES.
No. 333–69.

United States Court of Claims.
Dec. 10, 1971.

[redacted]

---

Roger S. Hanson, Woodland Hills, Cal., attorney of record for plaintiff.

Kenneth R. Boiarsky, Columbus, Ohio, with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON DEFENDANT'S MOTION AND PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

SKELTON, Judge.

This suit involves a claim by plaintiff, Jess Cancino, to recover Federal excise taxes in the sum of $17,891 collected from him as the seller-transferor of marihuana under circumstances where the transferee had not obtained an order form for the transfer nor paid the tax as required by law.

The unusual set of events which culminated in the bringing of the instant suit are as follows. Plaintiff was convicted of criminally violating Section 4742(a) [1] of the Internal Revenue Code of 1954 by the United States District Court for the Central District of California and sentenced to two years imprisonment for transferring marihuana without a written order form from the transferee as required by law. Thereafter, on December 7, 1956, the Internal Revenue Service, pursuant to Section 4741 [2] made a civil tax assessment of $44,600.31. On February 4, 1957, a notice of a Federal tax lien was filed. On October 16, 1961, Los Angeles police officers, after arresting plaintiff and charging him with possession of heroin for sale, entered plaintiff's home and seized a metal box containing $17,891 along with a letter from the Internal Revenue Service stating plaintiff's liability for the marihuana transfer tax. This taking was subsequently found by the United States District Court for the Central District of California to have been the result of an unlawful search

1. 26 U.S.C. § 4742 (1964) (Repealed October 27, 1970, effective May 1, 1971) reads in pertinent part, as follows:

"§ 4742. Order forms.

"(a) General requirement.

"It shall be unlawful for any person, whether or not required to pay a special tax and register under sections 4751 to 4753, inclusive, to transfer marihuana, except in pursuance of a written order of the person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary or his delegate."

* * * * *

2. 26 U.S.C. § 4741 (1964) (Repealed October 27, 1970, effective May 1, 1971) provides, in pertinent part, as follows:

"§ 4741. Imposition of tax.

"(a) Rate.

"There shall be imposed upon all transfers of marihuana which are required by section 4742 to be carried out in pursuance of written order forms taxes at the following rates:

* * * * *

"(2) Transfers to others.

"Upon each transfer to any person who has not paid the special tax and registered under sections 4751 to 4753, inclusive, $100 per ounce of marihuana or fraction thereof.

"(b) By whom paid.

"Such tax shall be paid by the transferee at the time of securing each order form and shall be in addition to the price of such form. Such transferee shall be liable for the tax imposed by this section but in the event that the transfer is made in violation of section 4742 without an order form and without payment of the transfer tax imposed by this section, the transferor shall also be liable for such tax."

and seizure and judgment was entered against the police officers in the sum of $17,891. On October 17, 1961, the confiscated money was delivered by the Los Angeles police to the Internal Revenue Service pursuant to the above-mentioned lien. The plaintiff, by certain letters filed within the three-year period of limitation prescribed by Section 6511(a) of the Internal Revenue Code of 1954, made an informal claim for refund. The Internal Revenue Service apparently did not regard such letters as constituting a claim for refund, and, therefore, neither allowed nor disallowed such claim. Thus, since no action was taken on plaintiff's claim, the defendant admits that this suit was timely brought.

Plaintiff seeks refund of all the money collected by the Internal Revenue Service on basically two grounds. First, he claims that the Marihuana Tax Act has been declared unconstitutional by the Supreme Court in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L. Ed.2d 57 (1969), because it violates the Fifth Amendment privilege against self-incrimination, and, therefore, he is entitled to a refund of taxes collected pursuant to that act. Second, plaintiff asserts that since the monies levied upon to collect the tax were obtained by an illegal search and seizure, then the levy itself is illegal. The taxpayer, in other words, uses a sort of "fruit of the poisonous tree" argument in claiming that the levy itself was tainted and thus illegal. Finally, plaintiff seeks refund of half the money collected by alleging that it was community property and that his wife's one-half interest is not liable for his tax debts.

We find that plaintiff's claims are all without merit for the reasons set out below.

I

*The Marihuana Tax Act is Constitutional and Plaintiff is Liable for the Transfer Tax*

Plaintiff argues that he, as a seller-transferor, is liable to pay the transfer tax if, and only if, the buyer-transferee is liable to pay said tax and does not pay it. He contends that since *Leary, supra*, declared the Marihuana Tax Act to be unconstitutional as violative of a buyer-transferee's Fifth Amendment privilege against self-incrimination and relieved the buyer-transferee of any duty to secure the order form and pay the transfer tax, plaintiff's secondary liability for the tax is likewise extinguished.

We do not agree that *Leary* declared the Marihuana Tax Act, or any part of it, unconstitutional. Nor do we believe that it relieved the buyer-transferee of liability for the transfer tax. The issue in *Leary* was not whether the Marihuana Tax Act was unconstitutional, nor whether the buyer-transferee was liable for the transfer tax, but rather whether a buyer-transferee's timely and proper assertion of his Fifth Amendment privilege against self-incrimination provided a complete defense to a criminal prosecution under Section 4744(a) (2),[3] and the Supreme Court held that it did.

However, in Buie v. United States, decided with Minor v. United States, 396

3. 26 U.S.C. § 4744 (1964) (Repealed October 27, 1970, effective May 1, 1971) reads, in pertinent part, as follows:
"§ 4744. Unlawful possession.
"(a) Persons in general.
"It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 4741 (a)—
"(1) to acquire or otherwise obtain any marihuana without having paid such tax, or
"(2) to transport or conceal, or in any manner facilitate the transportation or

concealment of, any marihuana so acquired or obtained.
Proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the Secretary or his delegate, to produce the order form required by section 4742 to be retained by him shall be presumptive evidence of guilt under this subsection and of liability for the tax imposed by section 4741(a)."
\*     \*     \*     \*     \*

U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969), the Supreme Court upheld the conviction of a seller-transferor under Section 4742(a), the same section under which plaintiff was convicted, for failure to sell pursuant to a written order form from the buyer. The Court in the *Buie* case, *supra*, distinguished this case from *Leary* as follows:

> Buie's situation thus bears little resemblance to the situation that confronted Leary. The vice of the statute in that case—as in Marchetti v. United States, 390 U.S. 39, [88 S.Ct. 697, 19 L.Ed.2d 889], Grosso v. United States, 390 U.S. 62, [88 S.Ct. 709, 19 L.Ed.2d 906], and Haynes v. United States, 390 U.S. 85, [88 S.Ct. 722, 19 L.Ed.2d 923] (1968)—stemmed from the dilemma that confronted the buyer. The statute purported to make all purchases of marihuana legal from the buyer's viewpoint at his option; all he had to do to avoid the federal penalty was to secure the form and pay the tax. But to exercise that option and avoid the federal penalty, he was forced to incriminate himself under other laws. In the present case, the first horn of this dilemma does not confront the seller. In the face of a buyer's refusal to secure the order form, the option of making a legal sale under federal law is foreclosed by the buyer's decision, and "full and literal compliance" with the law by the seller means simply that he cannot sell at all. There is no real and substantial possibility that the § 4742(a) order form requirement will in any way incriminate sellers for the simple reason that sellers will seldom, if ever, be confronted with an unregistered purchaser who is willing and able to secure the order form. [Footnote omitted.] [*Id.* at 92–93 of 396 U.S., at 286 of 90 S.Ct.]

Accordingly, the privilege against self-incrimination was held in *Buie* not to be a defense to a prosecution of the seller under Section 4742(a).

██ Plaintiff is here challenging the validity of the civil tax provisions (Section 4741) of the Marihuana Tax Act, rather than the criminal sanctions considered in *Leary* and *Buie*. In view of the Supreme Court's decisions under the comparable wagering tax provisions (Section 4401 et seq. of the Internal Revenue Code of 1954) in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), it seems clear that the civil tax liability under both the wagering tax and the marihuana tax provisions is not extinguished by the assertion of privilege against self-incrimination.

In the *Marchetti* case, *supra*, the Court stated:

> * * * We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements. If, in different circumstances, a taxpayer is not confronted by substantial hazards of self-incrimination, or if he is otherwise outside the privilege's protection, nothing we decide today would shield him from the various penalties prescribed by the wagering tax statutes. [*Id.* at 61 of 390 U.S., at 709 of 88 S.Ct.]

In *Grosso, supra,* the Court noted:

> Section 4411 provides that the occupational tax must be paid "by each person who is liable for tax under section 4401" and by each person who receives wagers for one liable under § 4401. It might therefore be argued that since petitioner is entitled to claim the constitutional privilege in defense of a prosecution for willful failure to pay the excise tax, he is thereby freed from liability for the occupational tax. We cannot accept such an argument. We do not hold today either that the excise tax is as such constitutionally impermissible, or that a proper claim of privilege extin-

guishes liability for taxation; we hold only that such a claim of privilege precludes a criminal conviction premised on failure to pay the tax. [*Id.* at 69–70, n. 7 of 390 U.S., at 714 of 88 S.Ct.]

Decisions subsequent to *Marchetti* and *Grosso* hold that the civil tax provided under the wagering tax provisions is still valid. *See, for example,* Washington v. United States, 402 F.2d 3 (4th Cir. 1968), cert. denied, 402 U.S. 978, 91 S.Ct. 1641, 29 L.Ed.2d 145 (1971); United States v. O'Keefe, 70–2 USTC ¶ 15,959 (N.D.Ill.1970); Hamilton v. United States, 309 F.Supp. 468 (S.D.N.Y.1969), aff'd per curiam, 429 F.2d 427 (2d Cir. 1970).

Plaintiff argues that there is a strong analogy between his case and United States v. U. S. Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). That case involved an action by the government for forfeiture, under Section 7302 of the Internal Revenue Code of 1954, of money in the possession of a gambler arrested for failing to register as a gambler and to pay the gambling tax required by Sections 4411, 4412, and 4901. The Supreme Court held that the Fifth Amendment privilege against self-incrimination could properly be invoked since forfeiture proceedings, though civil in form, are criminal in nature, and since these forfeiture statutes, when viewed in their entirety, are intended to penalize only persons significantly involved in a criminal enterprise. The instant case is clearly distinguishable, since it lacks the criminal penalty ingredient so necessary to the Court's decision in the *U.S. Coin & Currency* case.

Plaintiff relies heavily on the Court's statement in *Buie, supra,* at 92 of 396 U.S., at 286 of 90 S.Ct. that "the Fifth Amendment relieves unregistered buyers of any duty to pay the transfer tax and secure the incriminating order form. Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969)." In view of the issues actually considered and decided in *Leary, supra,* and in *Buie, supra,* and considering the above-quoted language in *Marchetti, supra,* and *Grosso, supra,* concerning the analogous wagering statutes, it is unreasonable to interpret this language in *Buie* as a declaration that the civil tax provision is invalid. A transferee who raises the Fifth Amendment privilege may not be criminally punished for failure to file the incriminating form or for failure to pay the transfer tax, but he is still civilly liable for the tax. While the transferee may not have a duty to voluntarily pay the transfer tax in circumstances where doing so would be self-incriminating, neither can he complain that his Fifth Amendment privilege is infringed if the Internal Revenue Service later collects the tax pursuant to a valid lien. Since the transferee remains civilly liable for the transfer tax, the transferor is also liable and likewise cannot complain about an involuntary collection.

Furthermore, it is not at all clear from reading Section 4741(b) of the Code that the plaintiff is correct in asserting that the transferor's liability for the transfer tax is secondary in nature and contingent on the transferee's liability and failure to pay. 26 U.S.C. § 4741(b), now repealed, provides:

§ 4741 Imposition of tax.

\* \* \* \* \* \*

(b) By whom paid.

Such tax shall be paid by the transferee at the time of securing each order form and shall be in addition to the price of such form. Such transferee shall be liable for the tax imposed by this section but in the event that the transfer is made in violation of section 4742 without an order form and without payment of the transfer tax imposed by this section, the transferor shall also be liable for such tax.

However, since we hold that the transferee remains liable for the transfer tax, it is not necessary to decide this issue. The transferee did not obtain the order form nor pay the tax. Consequently,

both the transferee and the transferor owed the tax.

■ Plaintiff further argues that if the transferee were liable for the transfer tax and failed to pay, and if the transferor wished to comply with the statute and pay the tax himself, it would be impossible to do so without incriminating himself. This may be true with regard to voluntary payment by a transferor, but it has little relevance under the facts of this case. The plaintiff took no action to comply with the statute. The tax was collected involuntarily pursuant to a duly filed tax lien. This method of collection required nothing on the part of plaintiff and was not in any respect self-incriminating. Furthermore, plaintiff had already been convicted under the Marihuana Tax Act at the time the tax lien was filed. Thus, the payment of the transfer tax after conviction, either voluntarily or involuntarily, could do little to further incriminate him.

In our opinion, the Marihuana Tax Act is constitutional, and plaintiff was liable under Section 4741(b) for payment of the transfer tax imposed by Section 4741(a) (2), and was not relieved of such liability where the tax was collected without any infringement of his right against self-incrimination.

## II

### *The Fourth Amendment Does Not Prohibit a Levy Upon Illegally Seized Property*

■ Plaintiff's second ground for refund, that since the $17,891 was illegally seized by the Los Angeles police in violation of plaintiff's Fourth Amendment rights, the Internal Revenue Service's subsequent collection thereof is tainted and thus illegal, is contrary to the law. The cases in this area hold clearly and unequivocally that a Federal tax lien can attach to illegally seized property without violating the Fourth Amendment. Ginsberg v. United States, 408 F.2d 1016 (9th Cir. 1969); Field v. United States, 263 F.2d 758 (5th Cir.

1959), cert. denied, 360 U.S. 918, 79 S. Ct. 1436, 3 L.Ed.2d 1534; Welsh v. United States, 95 U.S.App.D.C. 93, 220 F.2d 200 (D.C.Cir. 1955). *Cf.* Carlo v. United States, 286 F.2d 841 (2d Cir. 1961), cert. denied, 366 U.S. 944, 81 S. Ct. 1672, 6 L.Ed.2d 855; Simpson v. Thomas, 271 F.2d 450 (4th Cir. 1959). No rights of plaintiff were violated when the Internal Revenue Service collected the $17,891 to pay his outstanding tax debt secured by a tax lien. As a practical matter, even if the money were returned to plaintiff, as he claims it should be, nothing would prevent the Service from again levying on this same money at the time of its delivery to the petitioner.

## III

### *Wife's One-Half Interest in Community Property is Subject to Levy for Plaintiff's Federal Tax Debts*

In addition to seeking refund of the entire $17,891 on the two grounds discussed above, plaintiff further claims that the money levied upon was community property and that his wife's one-half interest therein is not subject to levy for his tax debts and must be refunded. This claim is open to attack on several grounds.

First, the record does not indicate whether the money seized was in fact community property, though there is a prima facie presumption in California that property owned or possessed by either spouse is community property.

Second, plaintiff's wife is not a party to this action. Consequently, this court may lack jurisdiction of this asserted claim for the wife and the claim may be barred by the statute of limitations. Plaintiff asserts in his brief that under California law the husband is manager of community property and his status as manager permits him to press this claim on behalf of his wife. The fallacy here is that plaintiff does not allege in his petition that he is acting on behalf of his wife, nor does his petition even mention his wife. He first raises the com-

munity property issue in his brief, apparently as an afterthought.

■ Even if the two above-mentioned difficulties could be overcome by plaintiff, there is a third obstacle which we deem to be dispositive of the community property claim. Under California law, all community property, including the wife's interest, is subject to the debts of the husband, and no distinction is drawn between a husband's separate and community debts. *See, e. g.,* Spreckels v. Spreckels, 116 Cal. 339, 48 P. 228 (1897); Grolemund v. Cafferata, 17 Cal.2d 679, 111 P.2d 641 (1941), cert. denied, 314 U.S. 612, 62 S.Ct. 87, 86 L. Ed. 492; Weinberg v. Weinberg, 67 Cal.2d 557, 63 Cal.Rptr. 13, 432 P.2d 709 (1967). In Grolemund v. Cafferata, *supra,* the Supreme Court of California stated:

> * * * A complete reading of all our code sections on community property clearly demonstrates that our community system is based upon the principle that all debts which are not specifically made the obligation of the wife are grouped together as the obligations of the husband and the community property (with the single exception of the wife's earnings, which are exempted from certain types of debt, Civ. Code sec. 168). * * * [*Id.* at 645.]

The court in *Grolemund* went on to say:

> Since it is our opinion that the enactment of section 161a of the Civil Code, defining the interests of the spouses in community property, has not altered the situation with respect to the wife's interest remaining subject to the husband's power of management and control, all community property, whether acquired prior to or subsequent to July 29, 1927 (the effective date of this statute), is liable for satisfaction of the husband's debt, Civ. Code sec. 168). * * *

In Smith v. Hamilton, 54–1 U.S.T.C. ¶ 9292 (S.D.Cal.1954), the court held that certain real estate was community property and that the entire parcel was liable for the withholding and employment tax debts of the husband. *See, also,* United States v. Mayfield, 67–1 U. S.T.C. ¶ 9336 (S.D.Tex.1967) where, under the similar community property laws of Texas, the court ruled that cash seized from a safety deposit box rented in the name of both spouses was community property and subject to the government's tax lien for wagering taxes owed by a partnership of which the husband was a member.

■ Moreover, it is clear that nothing in the Federal law would exempt a wife's interest in community property from the Federal tax debts of her husband. In United States v. Mitchell, 403 U.S. 190, 91 S.Ct. 1763, 29 L. Ed.2d 406 (1971), the Supreme Court stated as follows:

> * * * What is exempt from levy is specified in § 6334(a) [of the Internal Revenue Code of 1954]. Section 6334(c) provides, "Notwithstanding any other law of the United States, no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)." * * * [*Id.* at 204–205.]

We, therefore, find that if the $17,891 was community property, the one-half interest of plaintiff's wife was properly subject to levy for the transfer tax.

Accordingly, plaintiff's motion for judgment on the pleadings is denied, and that of the defendant is granted, and plaintiff's petition is dismissed.