Bernerd C. KINGSBURY, Jr.

v.

The UNITED STATES.

No. 245–74.

United States Court of Claims.

Oct. 19, 1977.

Jesse D. Miller, Los Angeles, Cal., attorney of record, for plaintiff; Miller & Mandel, Los Angeles, Cal., of counsel.

James L. Malone, III, Washington, D.C., with whom was Acting Asst. Atty. Gen. Myron C. Baum, Washington, D.C., for defendant; Theodore D. Peyser, Washington, D.C., of counsel.

Before DAVIS, NICHOLS and KASHIWA, Judges.

## OPINION

PER CURIAM:

This case comes before the court on defendant's motion, filed June 17, 1977, requesting that the court adopt, as the basis for its judgment in this case, the recommended decision of Trial Judge David Schwartz, filed April 25, 1977, pursuant to Rule 134(h), plaintiff having filed no intention to except thereto and the time for so filing pursuant to the Rules of the court having expired. Upon consideration thereof, without oral argument, since the court agrees with the trial judge's recommended

decision, as hereinafter set forth,* it hereby grants defendant's motion and affirms and adopts the said decision as the basis for its judgment in this case. Therefore, it is concluded that plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF TRIAL JUDGE

SCHWARTZ, Trial Judge: Plaintiff, Dr. Bernerd C. Kingsbury, Jr., sues for $37,100, a portion of the sum seized by the Government from plaintiff's son and daughter-in-law, Bruce and Valerie Kingsbury, and thereafter applied to the satisfaction of a fine imposed on Bruce Kingsbury for smuggling marijuana and a jeopardy tax assessment against him on account of income believed to have been derived from smuggling. The basis of the claim is that the money seized was Valerie Kingsbury's separate property and that she has assigned her rights to plaintiff. The suit fails for the reasons of law discussed below, among them the invalidation of the assignment by the Anti-Assignment Act, 31 U.S.C. § 203 (1970).

Bruce Kingsbury was arrested on October 19, 1971, and charged with the illegal importation of marijuana. He married Valerie Nelson Kingsbury in March 1972. On June 26, 1972, Bruce pleaded guilty, was fined $15,000 and sentenced to 4 years confinement at the Federal Correctional Institute (FCI) at Lompoc, California.

On September 5, 1972, the Internal Revenue Service made a jeopardy assessment against Bruce in the amount of $100,305.75, on the basis of a determination that he did not report $148,568.70 in income derived from illegal smuggling operations in 1971.

Later that month, Bruce learned from his Parole Board that he would not be considered for parole for 2 years. Thereupon, he and his wife planned his escape from prison.

On October 10, 1972, Bruce escaped from the FCI. He drove an FCI vehicle to a prearranged destination, where he met Valerie, who was driving an automobile. Bruce entered Valerie's automobile but before they could leave they were stopped and arrested. Shortly thereafter, FBI agents seized $6,230 in U.S. currency and $87 in Canadian currency from the vehicle in which Bruce and Valerie were apprehended. The agents also obtained from Valerie's purse two money bands containing $35,900 in U.S. currency, making a total seizure of $42,130 in U.S. currency and $87 in Canadian currency.

On November 2, 1972, the Internal Revenue Service served upon the FBI a notice of levy on the seized money to collect on the mentioned assessment. On November 28, 1972, the United States District Court for the Southern District of California issued a writ of execution against the seized money to collect the $15,000 fine imposed upon Bruce. On March 21, 1973, the FBI paid $15,000 in response to the district court's writ and $27,216.56 in response to the notice of levy. The entire sum seized was thereby exhausted.

Prior to the escape and during the period of Bruce's confinement at the FCI, the plaintiff provided substantial financial assistance to his daughter-in-law Valerie. He paid Valerie's attorney's fees, lent her $2,618 for the purchase of a Datsun pickup truck and (it is assumed without deciding)[1]

---

* Whereas the court adopts the trial judge's separate findings of fact, which are set forth in his report filed April 25, 1977, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

1. The Government in its post-trial papers does not seem to contest the fact of the loan. Nevertheless, resolution of the factual question of the making of the loan is not necessary for adjudication of the case. Even giving plaintiff the benefit of an assumption that the loan was made, the claim fails for the reasons of law discussed in the text.

The Government also argues that plaintiff has failed to meet his burden of proving by a preponderance of the evidence that the money seized was not Bruce Kingsbury's separate property, consisting, for instance, of hidden profits from the smuggling operations. The detailed findings which accompany this opinion show that Bruce Kingsbury had access to substantial funds and thus that the seized money or at least a substantial part of it may well have been his separate property. No finding is therefore indicated that the seized money was Valerie's separate property. However, once it

also lent her $30,000 in cash pursuant to a plan that she would start an employment agency.

Both Bruce and Valerie pleaded guilty to charges based on the escape. Valerie, who was expecting a child, was placed on probation. Bruce's sentencing was deferred and he was committed to the Federal Community Treatment Center in Los Angeles so that he could be near his wife. Their child was born early in February 1973.

On February 12, 1973, Valerie executed before a notary public a document entitled "Assignment," by which she assigned to the plaintiff, her father-in-law all her "right title and interest in the sum of $37,100.00 part of a larger sum of approximately $42,-000.00" seized on her arrest on October 10, 1972, "in repayment for a $30,000.00 loan given me on or about August 16, 1972" and other lesser loans and advances. Eight days later, on February 20, 1973, Bruce escaped from the Federal Community Treatment Center, and disappeared with his wife and child. Both Bruce and Valerie Kingsbury have remained fugitives from justice, through the time of the trial of this case.

Plaintiff sues as Valerie's assignor. To recover, plaintiff must show, as he contends: (1) that his claim is not barred by the Anti-Assignment Act, 31 U.S.C. § 203 (1970), and (2) that the money seized on October 10, 1972 was Valerie's separate and lawful property, which could not be used to satisfy either the notice of levy or the writ of execution aimed at the property of Bruce Kingsbury. For the reasons which follow, it is held that both contentions fail.

I

### The Invalidation of the Assignment by 31 U.S.C. § 203

The Anti-Assignment Act, 31 U.S.C. § 203 (1970)[2] nullifies assignments of claims against the United States which do not fulfill certain stated requirements. Several of the requirements are not met by the assignment from Valerie Kingsbury to the plaintiff. The Act makes the assignment "absolutely null and void" unless "freely made and executed in the presence of at least two attesting witnesses." The document in evidence bears only the signatures of Valerie Kingsbury and a notary public. The two indispensable witnesses are lacking.

Further, an assignment of a claim, to avoid nullification by the statute, must be made "after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof." See 3 Williston On Contracts § 417 (3d ed.1960). No claim has here been allowed. Indeed, a claim is only now being litigated; the amount has not been the subject of "ascertainment"; and of course no warrant for payment has been issued to the Treasury.

---

is assumed that the $30,000 loan was made, it seems more likely than not that the seized money included at least some of the loan proceeds.

**2.** The relevant portion of the Act reads as follows:

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, except as hereinafter provided, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the

payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same. * * *"

Exceptions, not here relevant, were made by Congress in 1940 for assignments to financial institutions and by case law for various types of assignments held to have taken place by operation of law. *See United States v. Aetna Surety Co.,* 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949).

Plaintiff attempts to avoid the Act by advancing alternative arguments: first, that the suit is not a claim against the United States within the intendment of the Act; and, second, that the rationale of the Act would not be defeated by holding it inapplicable to the suit.

The first argument—that the suit is not one on a claim against the United States— assumes that the money was the separate property of Valerie Kingsbury (an assumption challenged in the second part of this opinion). The contention seems to be that since the Government had no claim against the separate property of Valerie Kingsbury and was or is only a custodian of the seized money, her claim to the money is not a claim against the United States but is rather a claim for and against a specific res. In support, plaintiff relies on *United States v. $22,993.00 In Currency,* 332 F.Supp. 1277, 1279 (E.D.La.1971), which holds that a claimant to ownership of property may assign his interest without hazard from the Anti-Assignment Act, where the United States merely seizes property, taking only custody, and does not acquire ownership.

In that case, the United States Marshal had custody of property which had been seized by the United States under the internal revenue laws and for whose forfeiture the Government had brought suit. Intervening claimants to ownership assigned a part of their claim to their attorneys in payment of legal fees. The United States then made a jeopardy assessment for taxes against the claiming owners and served a notice of levy on the Marshal. The court held that since the property seized was not contraband and thus the United States had not by the seizure vested ownership of the property in itself, the claimants to ownership were proceeding against the res and not making a claim against the United States when they intervened, but were asserting a claim against the res itself. They could therefore assign their claim without complying with the Anti-Assignment Act.

■ The decision relied on the status of the assignor as the claimant to a res of which the United States was not yet the owner. Here the situation is the opposite. The United States is now the owner of the seized money; there is no res in dispute; and the claimant-plaintiff is surely making not a claim *in rem* but a claim *in personam* against the United States, if for no other reason than that the jurisdiction of this court is limited to money claims against the United States. 28 U.S.C. § 1491 (Supp. V 1975); *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 5, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). A judgment for plaintiff would be a judgment *in personam* against the United States, payable by the Treasury from an appropriation for judgments, upon certification by the court and settlement by the General Accounting Office. 28 U.S.C. § 2517 (1970), 31 U.S.C. § 724a (1970).

Plaintiff's claim falls within the jurisdiction of this court as one upon a contract implied in fact, as in *Kirkendall v. United States,* 31 F.Supp. 766, 90 Ct.Cl. 606 (1940), a decision recently approved in *Fidelity & Casualty Co. v. United States,* 490 F.2d 960, 963–64, 203 Ct.Cl. 486, 493 (1974) and *Economy Plumbing & Heating Co. v. United States,* 470 F.2d 585, 590, 200 Ct.Cl. 31, 38–39 (1972). *Kirkendall* held a contract to be implied from a wrongful seizure of the money of plaintiff to satisfy the tax debts of another. It may be assumed that the rationale of that case would permit jurisdiction of the present suit as one for breach of a contract implied from a levy on money of the plaintiff used to pay the taxes and criminal fine of another.

There is thus no res present in this case, such as there was in *United States v. $22,-993.00 In Currency, supra.* The money whose seizure is the origin of the present case became the property of the United States, by virtue of a levy and execution which came before the assignment—the converse of the situation in the cited case.

■ This court does not have jurisdiction of a claim *in rem* or of claims generally for specific relief *United States v. Jones,* 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889). Congress has consented to suits *in rem*

against the United States only in courts other than this one. 28 U.S.C. §§ 1444, 2410 (1970) (foreclosure); 28 U.S.C. §§ 1347, 2409 (1970) (partition); 28 U.S.C. § 2409a (Supp. V 1975) (quiet title); I.R.C.1954 § 7426(a), as amended (wrongful levy); 43 U.S.C. § 666 (1970) (water rights).

Plaintiff thus fails in his contention that he is claiming against a res and not against the United States. Next, or in the alternative, plaintiff contends that the underlying rationale of the Anti-Assignment Act would not be defeated by allowing this suit to proceed. Not so.

▪ The Act has three basic objectives: first, to prevent persons of influence from buying up claims which might then be improperly urged upon Government officials; second, to prevent possible multiple payment of claims and avoid the necessity of the investigation of alleged assignments by permitting the Government to deal only with the original claimant; and third, to preserve for the Government defenses and counterclaims which might not be available against an assignee. *United States v. Shannon,* 342 U.S. 288, 291–92, 72 S.Ct. 281, 96 L.Ed. 321 (1952); *United States v. Aetna Surety Co., supra,* 338 U.S. at 373, 70 S.Ct. 207.

▪ If Valerie Kingsbury has a claim for the money now sought by her father-in-law, she may of course sue on it. But the statute protects the Government from responding to others than Valerie Kingsbury, on her claim. Were plaintiff allowed to sue, the assignment would have to be investigated in the absence of its maker and the Government might have to face a future suit by the author of the assignment. Were Valerie Kingsbury to sue on her own claim, her testimony might be helpful to the Government on the questions which have not been decided but which might decide the case differently. Note 2 above. A minimum case surely intended to be

reached by the Act is that of an assignment made by a convicted criminal on the eve of her flight from justice. In any event, and whatever be the setting, the Act protects the Government from responding to Valerie's claim in a suit by her father-in-law, with whom the Government is not in privity.

The plaintiff's contention that none of the policy considerations underlying the Act are affected by this action must be rejected. The assignment is barred by the Act and the suit fails.

## II

### The State Law Issue

As an alternative ground for decision, it is held that even if the assignment to plaintiff were good and effective, the money in the hands of Valerie Kingsbury, though loaned to her as claimed by plaintiff, was nevertheless community property under California law and as such subject to the Government's claims against Bruce Kingsbury. The California Code creates a statutory presumption that property acquired during marriage is community property (12A Cal.Civ.Code § 5110 (West)) [3] :

All other real property situated in this state and all other personal property wherever situated acquired during the marriage by a married person while domiciled in this state, and property held in trust pursuant to Section 5113.5, is community property; but whenever any real or personal property, or any interest therein or encumbrance thereon, is acquired by a married woman by an instrument in writing, the presumption is that the same is her separate property * *.

The exception in the quoted statute for property acquired by a married woman "by an instrument in writing" is here inapplicable because no note or other writing marked the loan from plaintiff to Valerie Kingsbury. Other explicit exceptions, in a closely

---

**3.** Section 5110 of the California Civil Code was amended, effective January 1, 1975, in the course of a statutory equalization of the status of husband and wife in community property

law. The relevant statutory law, for purposes of this case, was that in effect in 1972 and 1973 at the time of the operative facts.

related section of the California Code, are made for property acquired by gift, bequest, devise, or descent. 12A Cal.Civ.Code § 5107 (West). These, too, have no application on the facts of this case.

■ The statute does not exempt from the presumption property acquired with borrowed money, without a writing. Accordingly, the California courts have construed property obtained through borrowing as constituting community property unless the loan is made on the faith of existing separate property belonging to a spouse. *Moulton v. Moulton,* 182 Cal. 185, 189, 187 P. 421, 422 (1920).

Plaintiff relies on *Hogevoll v. Hogevoll,* 59 Cal.App.2d 188, 138 P.2d 693 (1943), to support a contention that his loan to Valerie Kingsbury was extended on her personal credit, and thus must be considered her separate property. *Hogevoll* involved a purchase of real property by the wife, in which the deed of purchase named the wife alone as the grantee, a fact which in itself establishes a presumption of separate property under the exception for transactions accomplished by instruments in writing. The "primary presumption" of separate property arising from the fact that the deed named the wife as grantee, the court held, "cannot be overcome by a mere showing that the property was purchased by a loan. The husband must further show that the loan was made on the credit of the community property * * *." 59 Cal.App.2d at 196, 138 P.2d at 698.

The court concluded that the husband failed to prove that the loan was made on the credit of the community; the spouses were living separate and apart at the time of the loan, and no confidential relation existed between them. Evidence supporting the conclusion of separate property was that the wife's half-brother was the source of the loan to the wife for the purchase of the property.

■ The facts in the instant case dictate a contrary result. The lender was not a blood relative of the borrower-wife, but rather the father of the husband. The lender's own testimony warrants the conclusion that, in making the loan, he was motivated by the dual desire to aid his daughter-in-law, the borrower, and to benefit his son, the borrower's husband. The loan was thus designed to benefit the community of the two, Bruce and Valerie, and not to help Valerie, separately.

Plaintiff testified, moreover, that he thought Valerie to be destitute at the time of the making of the loan. Thus it cannot be said that in making the loan he relied on her existing separate property. Plaintiff made the loan to Valerie on the credit of the community. Finally, such evidence as there is of Valerie Kingsbury's own view of the ownership of the seized money tends to support the conclusion that it was community property. The written report of the FBI interview with Valerie Kingsbury at the time of her arrest states that "[s]he stated that the currency was the property of she and her husband and was not illegally obtained."

From the foregoing, it is concluded that plaintiff has failed to rebut the application to the seized money of the statutory presumption, quoted above, of section 5110 of California law that "[a]ll other real property situated in this state and all other personal property wherever situated acquired during the marriage by a married person while domiciled in this state * * * is community property." The seized money is held to be community property under the California law.

■ The wife's interest in community property in California is subject to the tax debts of her husband. In *Cancino v. United States,* 451 F.2d 1028, 1034, 196 Ct.Cl. 568, 577 (1971), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 337 (1972), this court held that "[u]nder California law, all community property, including the wife's interest, is subject to the debts of the husband, and no distinction is drawn between a husband's separate and community debts."

The taxes owing by Bruce Kingsbury were due for tax year 1971. Bruce and Valerie Kingsbury were married on March 9, 1972. The $15,000 fine was imposed on June 26, 1972 and the jeopardy assessment was made on September 5, 1972. The notice of levy was issued by the IRS on November 2, 1972. It makes no difference, in terms of the result, whether Bruce Kingsbury's obligations to the court and the IRS were premarital debts or not. For under California law even a premarital debt of the husband may be satisfied from community property. In *Weinberg v. Weinberg,* 67 Cal.2d 557, 563–64, 63 Cal.Rptr. 13, 15, 432 P.2d 709, 711 (1967), the California Supreme Court held that premarital creditors of the husband may satisfy their claims from community property assets. The policy of protection of the husband's creditors was explicitly held to outweigh the need for protection of family income, even from premarital creditors of the husband.

That policy has been applied to tax debts, in *Babb v. Schmidt,* 496 F.2d 957 (9th Cir. 1974), in which the court held bank accounts constituting California community assets to be subject to a tax lien for the husband's premarital tax debts. A tax obligation and lien thus reaches the wife's community one-half interest in the property where the lien is for taxes owed by the husband before the marriage. There is no distinction to be made for execution in enforcement of a fine imposed on a criminal conviction.

In sum, the assignment on which plaintiff sues is void under the Anti-Assignment Act and, as well, the seized money in the hands of plaintiff's assignor was under California law properly subjected to satisfaction of obligations of the assignor's husband. The petition must be dismissed.

### CONCLUSION OF LAW

Upon the findings and the foregoing opinion, which are adopted by the court, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is dismissed.