**Joe HILL et al., Plaintiffs,**

**v.**

**Hugh McMARTIN et al., Defendants.**

**Civ. A. No. 7–70267.**

United States District Court,
E. D. Michigan, S. D.

May 9, 1977.

Wilfred C. Rice, Detroit, Mich., for plaintiffs.

Michael A. Hathaway, Detroit, Mich., for Hugh McMartin and Jerry Simmons.

Michele Coleman Mayes, Asst. U. S. Atty., U. S. Dept. of Justice, Detroit, Mich., James H. Jeffries, III, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for federal defendants.

Richard A. Miller, Asst. City Atty., Southfield, Mich., for other defendants.

## OPINION

FEIKENS, District Judge.

Joe Hill, Robert Wayne Hill, and L. J. Pittman bring this lawsuit seeking the return of approximately $63,000 admittedly taken from their possession in the course of a search of an automobile owned by L. J. Pittman and occupied at the time by the two Hill brothers. Plaintiffs also seek actual and punitive damages for false arrest, and ridicule and scorn they claim they were subjected to in the course of the search, the arrest, and their subsequent efforts to obtain the return of their $63,000.

It is undisputed that the Hill brothers had driven to Boyer Bracey's house to deliver the $63,000 to him but had not delivered it because he was not at home. At oral argument the government suggested that this money was in fact Boyer Bracey's and the Hill brothers were simply delivering it to him, but no testimony was introduced to this effect. Plaintiffs claim that this money was to be a down payment on a house they had offered to purchase from Boyer Bracey. Since they never were able to give him that money and since IRS has taken the house for unpaid taxes, the money never became Boyer Bracey's and Plaintiffs still claim possession and full and exclusive control.

Plaintiffs filed suit in this Court on February 3, 1977 against 1) Hugh McMartin and 2) Jerry Simmons, who are officers of the Police Department of the City of Southfield, Michigan; 3) Phyllis D. Vidler, who is a Revenue Officer of the Federal Internal Revenue Service; 4) the Department of the Treasury-Internal Revenue Service, itself; 5) the Honorable Norman W. Feder, who is a District Judge of the 46th District Court in Oakland County in the State of Michigan; and 6) the United States. On March

11, 1977, pursuant to directive of the Court (and an argument of these parties that Judge Feder should be dismissed as a defendant in this matter)[1] Plaintiffs filed a first Amended Complaint, including a Petition for a Writ of Mandamus, and a Motion for Return of Property or Partial Judgment. Defendant Judge Feder is omitted, and four new Defendants, Joe Doe, a/k/a Sgt. Hinderlong; Richard Roe, a/k/a Officer Smith, Sam Doe, Southfield Police Officer, and Joe Doe, Southfield Police Officer, are added.

The Amended Complaint contains three unnumbered counts. The first count (hereinafter Count I) sets forth that two of the Plaintiffs, Joe Hill and Robert Wayne Hill, allege that they were wrongfully arrested and the car they were driving was illegally searched. In the course of that search the $63,000 in cash was taken. When Plaintiffs' attorney demanded the return of this money he was, after some delay, told that it had been turned over to the Internal Revenue Service to pay an assessment owed by Boyer Bracey.

Plaintiffs also allege that the refusal to return monies owed to them was a willful and intentional scheme or conspiracy to deprive Plaintiffs of their property; and that IRS Agent Vidler was negligent in accepting the money as that of Boyer Bracey without a sufficient investigation into the true ownership of the money.

In Count I Plaintiffs seek the return of the $63,000 pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, an order to show cause followed by an order requiring the immediate return of the $63,000, and actual and punitive damages of 3 million dollars, plus costs and attorney's fees.

The second count (hereinafter Count II) is styled as a Petition for a Writ of Mandamus pursuant to 28 U.S.C. § 1361, seeking the return of the $63,000. The third count (hereinafter Count III) is a Motion for Return of Property pursuant to Rule 41(e) and a Motion for Partial Judgment in the amount of $63,000.

Argument was heard and testimony taken with regard to the prayer for an order requiring the immediate return of the $63,000. Both parties have moved for summary disposal of this issue by the Court; Plaintiffs in their prayer for an order to show cause to be followed by an order requiring immediate return of the property, and the United States and associated Defendants by motion to dismiss for failure to state a cause of action, and lack of jurisdiction.

■ The mandamus provisions of 28 U.S.C. § 1361 are inapplicable in the present case. The only individual Federal Defendant named in this action, Revenue Officer Vidler does not have the authority or capacity to give the Plaintiffs the relief they seek. The relief sought can only be obtained from the United States itself. *Hawii v. Gordon,* 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1967). In *Hawii v. Gordon,* Plaintiff sought an order which would require action by the Director of the Bureau of the Budget. The Court was of the view that relief nominally sought against an officer is in fact against the sovereign if the decree would operate effectively against the latter. The Court concluded that the suit in mandamus was in reality a suit against the government of the United States and still required the specific consent of the sovereign to suit.

■ To the extent that the Amended Complaint seeks to rely on the Federal Civil Rights Act, 42 U.S.C. §§ 1983, 1985 and 1986, such provisions do not extend to the Federal Government itself, against whom the present equitable relief is sought.

■ Plaintiffs' claim for the immediate return of the money taken insofar as it relies on Rule 41(e) is also inappropriate. Rule 41(e) only applies when a Federal criminal prosecution is pending. It is a rule of procedure for criminal actions and not a basis of general jurisdiction. *See Richey v. Smith,* 515 F.2d 1239, 1242–3 (5th Cir. 1975). Some recent cases have stated a general equitable power in the Federal courts to

---

1. See Order of the Court of March 4, 1977.

order the return of property seized although no criminal action is pending. *Richey, supra; Hunsucker, supra. See also In Re Fried,* 161 F.2d 453 (2d Cir.), cert. dismissed, 332 U.S. 807, 68 S.Ct. 105, 92 L.Ed. 384 (1947); *Coury v. United States,* 426 F.2d 1354 (6th Cir. 1970). In these cases, however, the seizure was by Federal agents, and the courts premised their power to act in equity on the assertion that there was no adequate remedy provided for at law. In this case, the seizure complained of was executed by the police of the City of Southfield and was in no way at the request of or in cooperation with Federal authorities. Also, in the case at hand a remedy is specifically provided for at law. *See* 26 U.S.C. §§ 7426 and 6532(c)(1).

■ The case is here in the unusual posture of a petition for mandamus and a Rule 41(e) motion because the nine month time limitation on the statutory right to challenge a wrongful levy ended some two weeks before the original complaint was filed. Defendants, in their motion to dismiss, argue that the wrongful levy statute was intended by Congress to be the exclusive remedy for a third party whose property has been taken pursuant to a levy against a taxpayer. *Dieckmann v. United States,* 550 F.2d 622 (10th Cir. 1977);[2] *Mill Factors Corp. v. United States,* 391 F.Supp. 387 (S.D.N.Y.1975);[3] *DeJesus v. United States,* (E.D.N.Y., 5/17/74, reported only in

Standard Federal Tax Reports, 74–2 U.S.T. C.);[4] *Gantt v. United States,* 36 A.F.T.R.2d 75–5926 (N.D.Ill.1975);[5] *Busse v. United States,* 542 F.2d 421 (7th Cir. 1976);[6] and *Reiling v. United States,* (N.D.Ind., unreported, Civil Action No. L. 76–19, February 4, 1977.)[7]

To avoid this argument, Plaintiffs urge that since the 'levy', by its own terms, was only for monies *belonging to* Boyer Bracey, monies not belonging to Boyer Bracey were never subject to a 'levy' and thus the wrongful 'levy' statute (with its nine month time limitation) does not apply.

This argument exalts from over substance. A wrongful levy is still a 'levy' for the purposes of the wrongful levy statute. *United Pacific Insurance Co. v. United States,* 320 F.Supp. 450 (D.Or.1970); *Hamilton Nat'l Bank v. United States,* 367 F.Supp. 1110 (E.D.Tenn.1972). The purpose of the wrongful levy statute is to provide for levies that are 'wrongful' in a broad sense of the word.[8] If a mere defect in the levy could render it not a levy and thereby take it out of the statute's provisions, it would be difficult to imagine a case where the statute would be of any effect.

On the other hand, the Internal Revenue Code, which severely limits judicial interference in the collection of taxes in the interest of insuring the prompt collection of necessary revenues, may have a harsh ef-

---

**2.** In *Dieckmann,* IRS had levied against funds *in the possession of the taxpayer,* Plaintiffs claimed the taxpayer was merely a bailee.

**3.** In *Mill Factors,* the dispute, had it been allowed, would have centered on whether IRS could pierce the corporate veil to levy upon assets that belong to the corporate "alter ego" of a taxpayer.

**4.** The facts in *DeJesus* are "muddily presented," but appear indistinguishable from the case at bar.

**5.** *Gantt* involved assets arguably in the possession of the taxpayer's wife.

**6.** *Busse* was similar to *Gantt.*

**7.** The funds were taken from the taxpayer in *Reiling,* but Plaintiffs claimed priority of their lien on the same funds.

**8.** 26 U.S.C. § 7426, referred to as the wrongful levy statute provides:

"1. *Civil actions by persons other than taxpayers*

(a) *Actions permitted—*

(1) *Wrongful levy*—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate."

Jurisdiction in the United States District Court is provided for in 28 U.S.C. § 1346(e).

fect in a given case where the proper powers of an agent of the IRS are exceeded. Accordingly, the courts have, of necessity, found certain narrow exceptions to those provisions of the Internal Revenue Code which restrict the right of a citizen to recourse to the courts.

For example in *Yannicelli v. Nash,* 354 F.Supp. 143 (D.N.J.1973), while noting that,

> Under the rule of sovereign immunity, a suit against the United States is barred unless the United States specifically waives its immunity by statute and consents to be sued. (at 149, citations omitted)

the Court went on to state:

> I.R.C. § 7421 states that "Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), not suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court. . . ." *This provision does not prohibit any and all suits to restrain the assessment or collection of a tax.* In *Miller v. Standard Nut Margarine Co.,* 284 U.S. 498, 52 S.Ct. 23, 76 L.Ed. 517 (1932), the Supreme Court held that such a suit may be maintained if the complainant shows the existence of special and *extraordinary circumstances sufficient to bring the case within some acknowledged head of equity.* (at 151, emphasis added)

*See also Enochs v. Williams Packing and Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); *Chester Wheeler Campbell v. United States,* (unreported opinion, Civil Action No. 7–70482, United States District Court, Eastern District of Michigan, July 31, 1975).

▮ Plaintiffs' complaint, liberally construed, has set forth facts which would justify the return of the $63,000 from the United States Government under one of two apparent theories. First, under the rationale of *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), Plaintiffs may bring themselves within an exception to the restrictions on suits which are found in the Internal Revenue Code in 26 U.S.C. § 6532(c)(1). Although *Bivens* involved violations of Fourth Amendment rights, its rationale has been expanded to encompass violations of Fifth Amendment rights; *States Marine Lines v. Shultz,* 498 F.2d 1146 (4th Cir. 1974); and also First Amendment rights; *Yiamouyiannis v. Chemical Abstracts Service,* 521 F.2d 1392 (6th Cir. 1975). *States Marine Lines* is particularly apposite here, as it involved an improper seizure by customs agents.

Plaintiffs here allege a deprivation of their Fifth Amendment rights. Accordingly, the Court has jurisdiction pursuant to the *Bivens* doctrine. As Mr. Justice Harlan, concurring in *Bivens,* stated,

> If explicit congressional authorization is an absolute prerequisite to the power of a federal court to accord compensatory relief regardless of the necessity or appropriateness of damages as a remedy simply because of the status of a legal interest as constitutionally protected, then it seems to me that explicit congressional authorization is similarly prerequisite to the exercise of equitable remedial discretion in favor of constitutionally protected interests. Conversely, if a general grant of jurisdiction to the federal courts by Congress is thought adequate to empower a federal court to grant equitable relief for all areas of subject-matter jurisdiction enumerated therein, see 28 U.S.C. § 1331(a), then it seems to me that the same statute is sufficient to empower a federal court to grant a traditional remedy at law. Of course, the special historical traditions governing the federal equity system, see *Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), might still bear on the comparative appropriateness of granting equitable relief as opposed to money damages. That possibility, however, relates, not to whether the federal courts have the power to afford one type of remedy as opposed to the other, but rather to the criteria which should govern the exercise of our power. (403 U.S. at 405–6, 91 S.Ct. at 2009, footnote omitted)

In addition, Plaintiffs have set forth facts which might support their recovery under the general equitable powers of the Court; *Richey, supra; Hunsucker, supra.* This would be so only if the remedy that was available at law is restricted pursuant to 26 U.S.C. § 6532(c)(1) and that that restriction was unconstitutional in that it denied Plaintiffs equal protection under the law as required by the substantive due process requirements of the Fifth Amendment. If the time restriction found in § 6532(c)(1) is void, then suit as would be allowed under 26 U.S.C. § 7426 ought still be available to Plaintiffs.

Equal protection analysis has evolved a two-tiered approach involving cases employing the standard referred to as 'strict scrutiny', *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), and that of 'minimal scrutiny', *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).[9] In the present case a third party whose assets are levied upon has only nine months in which to sue on a wrongful levy while the taxpayer himself has two years in which to do so. Ignorance of the occurrence of the levy, fraud by the Internal Revenue Service in processing the request for refund, etc., all have been held not to bar the running of the nine month limit from the date of the levy. Even under the 'minimal scrutiny' standard this discrimination against third persons and in favor of taxpayers must bear some rational and substantial relationship to the legitimate objectives of the Internal Revenue Act in order to avoid being an "invidious," and therefore constitutionally impermissible discrimination. *McGowan v. Maryland,* 366 U.S. 420, at 425–8 (1960). *Lindsey v. Normet,* supra, 405 U.S. at 69–74, 92 S.Ct. 862. *Lindsey* is parallel to the present case in that it involved a restriction on the right to sue which was part of a state housing law. There, however, a rational relationship to valid legislative objectives was apparent.

As dismissal of this action will not be granted pursuant to *Bivens,* the more complex issues presented by this equal protection argument will await a full development of the underlying facts at trial before the Court passes on the applicability of such a theory of action and the consequent basis for jurisdiction.

As suggested earlier, the approaches of both Plaintiffs and Defendants in urging summary disposition of this matter on the Court are inadequate. Defendants assume that no alternatives exist to the procedure provided for in the wrongful levy statute, and Plaintiffs' several bases for summary relief are inappropriate. Accordingly, and in view of the complexity of the issues presented by the facts as pleaded in this case, the right to the return of the $63,000 taken by the Southfield Police and turned over, pursuant to levy, to the Internal Revenue Service will not be decided without a full trial on the merits. Since the pleadings may be amended to conform to the proofs adduced at trial, leave will be granted freely.

Defendants also object to service of process due to Plaintiffs' failure to comply with Rules 4(d) (4) and (5) of the Federal Rules of Civil Procedure. Plaintiffs must effect proper service of process. Following service Defendants will be required to answer as provided for in the Rules, discovery will be allowed, and the case will be set on the Court's calendar for accelerated trial. An appropriate order is entered herewith.

---

**9.** See Gunther, "The Supreme Court 1971 Term, Foreward, In Search of Evolving Doctrine on a Changing Court: A Model for a New Equal Protection," 86 Harv.L.Rev. 1, 10–20 (1972). *See Boraas v. Village of Belle Terre,* 476 F.2d 806 (2d Cir.), *rev'd,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1973) for discussion of a possible middle standard or more flexible approach.