Keith GORDON

v.

The UNITED STATES.

No. 310–79T.

United States Court of Claims.

May 6, 1981.

Jacob Fishman, Miami, Fla., for plaintiff, Milton M. Ferrell, Jr., Miami, Fla., attorney of record.

David C. Hickman, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, SKELTON, Senior Judge, and KASHIWA, Judge.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge.

This case is before the court on defendant's motion for summary judgment under Rule 101. We must decide whether a levy against a taxpayer's property to collect federal income taxes may be contested in the Court of Claims by a third party who claims the property as his. If suit in this court is proper, we must then decide the proper period of limitation for such a suit. After considering the written and oral submissions of the parties, we conclude that this case is one within our jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (1976),[1] but that this suit is time barred.

1. In relevant part, 28 U.S.C. § 1491 provides: "The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any

The facts of this controversy are simple and not in dispute. Plaintiff Gordon is a Jamaican citizen and the spiritual leader of the Zion Coptic Church. In 1978, Gordon was arrested in Florida on state drug charges. He deposited $500,000 with the Accredited Surety and Casualty Company (Accredited) to obtain a pre-trial release bond. Thereafter, in March 1978, the Internal Revenue Service (IRS) levied on all property in the possession of Accredited belonging to the Zion Coptic Church or certain nominees, including Gordon. The levy was made to collect an asserted tax deficiency reflecting the Church's unreported drug traffic income. See 26 U.S.C. (Internal Revenue Code of 1954, hereafter I.R.C.) § 6851, I.R.C. § 6861; I.R.C. § 6331. Pursuant to that levy, the $500,000 Gordon deposited was apparently paid over to the IRS. In July 1979, 16 months after the levy, Gordon filed a petition in this court alleging that $500,000 belonging to him was improperly paid by Accredited to the IRS under the levy. The petition seeks recovery of that amount from defendant.

### Subject Matter Jurisdiction

■ Gordon alleges jurisdiction in this court under the Tucker Act in that his claim is founded on a contract implied in fact to return moneys wrongfully paid to defendant. *See Kirkendall v. United States*, 90 Ct.Cl. 606, 613–614, 31 F.Supp. 766, 769–770 (1940). *See also Bull v. United States*, 295 U.S. 247, 261–262, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935); *United States v. State Bank*, 96 U.S. 30, 35, 24 L.Ed. 647 (1877). Alternatively, Gordon alleges Tucker Act jurisdiction because his claim is one based on the just compensation clause of the Fifth Amendment.[2] Defendant, in its motion for summary judgment, argues that whatever jurisdiction, contract or constitutional, this court had prior to 1966, the enactment of I.R.C. § 7426[3] as section 110(a) of the Federal Tax Lien Act of 1966, Pub.L.No.89–719, 80 Stat. 1125 (1966) (Tax Lien Act), ended this court's jurisdiction to hear contests of tax levies brought by one other than the taxpayer, *i. e.*, a third party. Defendant contends that all such actions must now be brought under I.R.C. § 7426 and only in the district courts. Although not briefed by defendant, a corollary of its position is that if Tucker Act jurisdiction was not withdrawn by section 110(a) of the Tax Lien Act, section 110(b) (presently I.R.C. § 6532(c)) limits Tucker Act jurisdiction of third-party levy contests to those

express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. * * *"

2. Gordon's related allegation of Tucker Act jurisdiction under the due process clause must fail. That clause does not mandate the federal government pay money damages, as *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976), requires. *Vlahakis v. United States*, 215 Ct.Cl. 1018, 1019 (1978); *Walton v. United States*, 213 Ct.Cl. 755, 757 (1977).

3. I.R.C. § 7426 provides in pertinent part:
"(a) *Actions permitted.*—
"(1) Wrongful levy.—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action

may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate.

* * * * * *

"(b) *Adjudication.*—The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:
"(1) Injunction.—If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.
"(2) Recovery of property.—If the court determines that such property has been wrongfully levied upon, the court may—
"(A) order the return of specific property if the United States is in possession of such property;
"(B) grant a judgment for the amount of money levied upon; or
"(C) grant a judgment for an amount not exceeding the amount received by the United States from the sale of such property."

commenced within 9 months of the levy. The primary issue, therefore, is whether the Tax Lien Act provisions replace or augment pre-1966 law in this court.

The proper inquiry, of course, is not whether the Tax Lien Act expresses an affirmative congressional intent to permit recourse under the Tucker Act. Rather, it is whether Congress *withdrew* Tucker Act jurisdiction over such claims when the Tax Lien Act was passed. *See Regional Rail Reorganization Act Cases*, 419 U.S. 102, 126, 95 S.Ct. 335, 349, 42 L.Ed.2d 320 (1974); *Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 463, 100 S.Ct. 647, 649, 62 L.Ed.2d 614 (1980). *See also Brown v. General Services Administration*, 425 U.S. 820, 824–825, 834, 96 S.Ct. 1961, 1963–1964, 1968, 48 L.Ed.2d 402 (1976), and cases cited; *Matson Navigation Co. v. United States*, 284 U.S. 352, 356–357, 52 S.Ct. 162, 164–165, 76 L.Ed. 336 (1932). *Compare Brown, supra* (the legislative history and structure of 42 U.S.C. § 2000e–16 indicate Congress intended amendment to Title VII to be the exclusive remedy for federal discrimination in employment) *with Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975) (Title VII remedies for private discrimination do not supplant remedies under 42 U.S.C. § 1981). We have applied similar notions in a variety of contexts. *See, e. g., Fiorentino v. United States*, 221 Ct.Cl. ——, ——, 607 F.2d 963, 969–970 (1979), *cert. denied*, 444 U.S. 1083,

100 S.Ct. 1039, 62 L.Ed.2d 768 (1980) (Tucker Act jurisdiction of pay claim based on adverse file items withdrawn by Privacy Act of 1974, 5 U.S.C. § 552(a)); *Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 57 nn.4 & 5, 58 & n.8, 536 F.2d 347, 350 nn.4 & 5, 351 & n.8 (1976), *cert. denied*, 430 U.S. 969 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977) (Tucker Act jurisdiction over post-1972 Medicare provider claims withdrawn by 42 U.S.C. § 1395oo(f)); *Butz Engineering Corp. v. United States*, 204 Ct.Cl. 561, 566–577, 499 F.2d 619, 621–628 (1974) (Tucker Act jurisdiction over claims against Postal Service continues after Postal Reorganization Act, Title 39, U.S.C.); *National State Bank of Newark v. United States*, 174 Ct.Cl. 872, 885, 357 F.2d 704, 711–712 (1966) (Tucker Act jurisdiction of claims under Federal Housing Act not precluded by 12 U.S.C. § 1702).

Defendant concedes, as it must, that nowhere in the Tax Lien Act or its legislative history is there an express revocation of this court's Tucker Act jurisdiction to hear third-party levy actions.[4] Congress might, for example, have included a provision specifically denying this court jurisdiction.[5] It might have granted the district courts exclusive jurisdiction over any third-party levy contests when Congress amended 28 U.S.C. § 1346.[6] Or it might have used mandatory ("shall") rather than permissive ("may") language in I.R.C. § 7426.[7] Congress chose none of these methods to with-

---

**4.** The 1940 *Kirkendall* decision has been cited with approval in several cases. *E. g., Tucker v. United States*, 95 Ct.Cl. 415, 42 F.Supp. 292 (1942); *J. C. Pitman and Sons, Inc. v. United States*, 161 Ct.Cl. 701, 317 F.2d 366 (1963); *Ralston Steel Corp. v. United States*, 169 Ct.Cl. 119, 340 F.2d 663, *cert. denied*, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965); *Economy Plumbing and Heating Co. v. United States*, 200 Ct.Cl. 31, 470 F.2d 585 (1972); *Fidelity and Cas. Co. of N. Y. v. United States*, 203 Ct.Cl. 486, 490 F.2d 960 (1974); *Collins v. United States*, 209 Ct.Cl. 413, 532 F.2d 1344 (1976); *Kingsbury v. United States*, 215 Ct.Cl. 136, 563 F.2d 1019 (1977). See *First Nat'l Bank of Emlenton, Pa. v. United States*, 265 F.2d 297, 300 (3d Cir. 1959). Of these, only *Collins* and *Kingsbury* involved tax years after I.R.C. § 7426 became effective. *Collins* assumed without discussion that Tucker Act jurisdiction continued. In *Kingsbury*, we adopted by per

curiam opinion a trial judge's report. That report had suggested in dicta that our jurisdiction of third-party levy contests continued after the Tax Lien Act. Although we reach a conclusion similar to that in *Kingsbury*, we do so from the legislative history and structure of I.R.C. § 7426 rather than by application of the *Kingsbury* decision.

**5.** See 28 U.S.C. §§ 1491, 1501, 1502, and 1503.

**6.** See 28 U.S.C. § 1346(b).

**7.** *Compare, e. g.*, I.R.C. §§ 6511(a), 6532(a), and 7422(a), which together establish mandatory procedures in refund suits, with I.R.C. § 7428, which allows, but does not require, a declaratory judgment action as to charitable status during pendency of IRS proceedings. Charities not electing I.R.C. § 7428 actions may contest eventual deficiencies in the normal manner.

draw this court's jurisdiction. Indeed, Congress did not even term the grant of jurisdiction to the district courts over I.R.C. § 7426 actions as exclusive. See 28 U.S.C. § 1346(e).[8]

Instead, defendant argues that because neither the statute nor the accompanying committee reports mention the Court of Claims, Congress must have overlooked the jurisdiction exercised by this court in the *Kirkendall* line of cases. This being so, the argument goes, we must infer Congress assumed I.R.C. § 7426 would be the exclusive remedy. This inference, defendant continues, is supported by the completeness of the I.R.C. § 7426 remedy. Thus, concludes defendant, under *Brown v. General Services Administration, supra,* this court must provide the exclusivity Congress assumed, albeit in error. We find, however, that neither the legislative history nor the structure of I.R.C. § 7426 support defendant's assertions.

The passage of the Tax Lien Act culminated an extensive effort by the American Bar Association to remedy problems involved in collecting delinquent federal taxes. The ABA had first approved the Final Report of its Committee on Federal Tax Liens in 1959. The report[9] contained a concise analysis of the statutory and decisional law and was accompanied by proposed legislation to correct the technical problems found. Over the next 7 years, the ABA worked for the passage of its legislation.

The ABA report included a recommendation for a new Code provision, section 7431, allowing third-party levy contests in the district courts. The explanation for proposed section 7431 indicated that while decisional law generally allowed third parties to contest levies in the district courts,[10] there was some uncertainty whether the district courts had jurisdiction to grant injunctive and declaratory relief if the nominal defendant was the United States rather than the tax collector.[11] Decisional law, the report continued, was unclear whether a claim for refund by the third party (although not technically a taxpayer) was necessary prior to suit.[12] The ABA report termed litigation over such "technicalities" as "fruitless" and recommended proposed section 7431 as the solution. The report explained that proposed section 7431 generally confirmed existing district court remedies regardless of nominal defendant, removed the "technicalities," and also removed the existing $10,000 maximum otherwise applicable to actions brought against the United States in the district courts.[13] Also noted was Tucker Act jurisdiction in the Court of Claims:

> Present decisions also permit one whose money is wrongly seized for another's

---

8. Indeed, it might even be argued based solely on 28 U.S.C. § 1346(e) that this court and the district courts have concurrent jurisdiction over I.R.C. § 7426 actions. Gordon does not make this argument, no doubt based on I.R.C. § 7426(a) and its legislative history, *e. g.,* H.R. Rep.No.1884, 89th Cong., 2d Sess. 28, *reprinted in* 1966-2 C.B. 815, 834; S.Rep.No.1708, 89th Cong., 2d Sess. 30, *reprinted in* 1966-2 C.B. 876, 897, U.S.Code Cong. & Admin.News 1966 p. 3722.

9. The ABA Final Report was reprinted in full as a portion of the Tax Lien Act's legislative history by the Ways and Means staff. See Staff of the Committee on Ways and Means, 89th Cong., 2d Sess., Legislative History of the Federal Tax Lien Act of 1966, 118-256 (1966). For convenience, subsequent references to the ABA Final Report are to the legislative history volume, as are citations to other materials not readily obtainable.

10. ABA Final Report, Legislative History, *supra* at 168. *See also In Re Fassett,* 142 U.S. 479, 485–486, 12 S.Ct. 295, 298, 35 L.Ed. 1087 (1892); *Seattle Ass'n of Credit Men v. United States,* 240 F.2d 906, 909 (9th Cir. 1957); *Stuart v. Chinese Chamber of Commerce of Phoenix,* 168 F.2d 709, 712 (9th Cir. 1948); *Tomlinson v. Smith,* 128 F.2d 808, 811 (7th Cir. 1942); *Rothensies v. Ullman,* 110 F.2d 590, 592 (3d Cir. 1940); *Long v. Rasmussen,* 281 F. 236, 238 (D.C.Mont.1922).

11. ABA Final Report, Legislative History, *supra.*

12. *Id. See also Phillips v. United States,* 346 F.2d 999, 1000 (2d Cir. 1965); *First Nat'l Bank of Emlenton, supra* note 4; *Chinese Chamber of Commerce of Phoenix, supra* note 10; *Tomlinson, supra* note 10; *Ullman, supra* note 10.

13. ABA Final Report, Legislative History, *supra.*

taxes to sue the United States for its recovery, but the suit must be in the Court of Claims if the amount exceeds $10,000 (although there are also decisions permitting such suit to be brought in the district court, without jurisdictional limit, if the Director is the nominal defendant). * * * [ABA Final Report, Legislative History, *supra* at 168.]

Thus, the ABA report indicated the focus of proposed section 7431 was to clarify uncertainties in the relief a *district court* might provide. The report also demonstrates that those who drafted proposed section 7431 were aware a third-party levy contest could be maintained in the Court of Claims. The drafters of proposed section 7431 apparently perceived no inconsistency between continued jurisdiction in this court and that under the proposal, for although a provision was included detailing the effect of proposed section 7431 on other existing actions, the drafters did not include a limitation on actions in the Court of Claims. See ABA Final Report, § 7431(f), Legislative History, *supra* at 204.

Using the ABA submissions as a guideline,[14] Chairman Mills of the Ways and Means Committee and his staff drafted and introduced H.R.11256 in the Eighty-ninth Congress.[15] Section 110(a) of H.R.11256 followed proposed section 7431 closely and focused as had proposed section 7431 on district court actions. H.R.11256 (including section 110) was enacted with only minor changes not relevant here as the Tax Lien Act. *Compare* present I.R.C. § 7426(a), (b)(1), and (b)(2)(A)–(C) *with* ABA Final Report § 7431(a)(1)–(2), (b)(1)–(4), Legislative History, *supra* at 202–203. As Chairman Mills' remarks during floor debate indicate, the ABA played a crucial role in the preparation and passage of the Tax Lien Act.[16]

Defendant does not dispute the ABA's role in the enactment of I.R.C. § 7426, nor does it dispute the specific reference in the ABA submissions to this court's jurisdiction. Instead, defendant urges that despite the explicit reference to the Court of Claims, Congress was simply unaware of this court's jurisdiction. In support of its contention, defendant relies on portions of the committee reports which it says demonstrate the alleged oversight. Those excerpts[17] refer generally to a lack of juris-

**14.** *See* Statement of Chairman Mills at Hearings on H.R.11256, March 2, 1966, *reprinted in* Legislative History, *supra* at 45; Press release of February 11, 1966, announcing hearings on H.R.11256, *reprinted id.*; Press release of September 24, 1965, announcing introduction of H.R.11256, *reprinted id.* at 35.

**15.** A virtually identical bill, H.R.12545, was introduced unsuccessfully in the Eighty-eighth Congress by Chairman Mills.

**16.** Chairman Mills highlighted the evolution of the Tax Lien Act (then H.R.11256) on the floor of the House:
    *   *   *   *   *   *
"For over 8 years now, the American Bar Association, through a special committee composed of representatives of four of its sections, has worked with representatives of the Treasury Department and committee staff to revise the Internal Revenue Code's lien provisions with a view to meeting the problems I have mentioned, and also to improving the ability of the Federal tax liens to fulfill their original function of assisting in the collection of revenues.
"Although there were many members of the American Bar Association who participated in these discussions and this work, I would especially like to mention the name of the one who acted as chairman of that group, Mr. Laurens Williams, who is a tax attorney here in the city of Washington, and who formerly served in the Treasury Department as the senior tax lawyer. He worked with Treasury people, his own committee, and the staffs of our own committees. I do not know how many months, how many hours, how many days were spent in the development of this program, but those who worked on this certainly have rendered a great service in improving the tax laws." [112 Cong.Rec. 22224 (1966).]
    *   *   *   *   *   *
*See also* H.R.Rep.No.1884, *supra* note 8 at 2, *reprinted in* 1966–2 C.B. at 815; S.Rep.No. 1708, *supra* note 8 at 2, *reprinted in* 1966–2 C.B. at 876.

**17.** For example,
"[p]resent law is quite limited in the extent to which it takes into account the rights of third parties in the procedures set out in the tax laws for the collection of taxes from a taxpayer. Under present law, for example, the United States cannot be sued by third persons where

diction in the federal courts to hear third-party levy contests under the then present law. The remaining portions of those paragraphs, however, suggest the references to present law extend only to the tax laws, *i. e.*, the Internal Revenue Code. Several federal appellate decisions [18] had thought this critical, and it is not unreasonable to assume the committee reports refer to this statutory deficiency rather than to a wholesale claim that under no theory could a federal court have jurisdiction of a third-party claim against the United States. Alternatively, the cited portions also indicate a number of concerns relevant only to district court litigation, *i. e.*, nominal defendant, venue, and type of relief available. Thus, the reference to present law could be taken to mean *present law in the district courts.* In any event, we need not choose between these alternate readings of the portions defendant cites. It is enough that alternate readings exist to negate the inference defendant would have us draw.[19]

Nor do we otherwise discern an intent for I.R.C. § 7426's exclusivity. While I.R.C. § 7426 does provide a range of remedies, it lacks the "careful blend of administrative and judicial enforcement powers" the Supreme Court underscored in *Brown v. General Services Administration, supra.* Unlike the detailed provisions of 42 U.S.C. § 2000e–16 requiring prior administrative action, there are no mandatory preliminaries for an I.R.C. § 7426 action which could be circumvented by ingenious plaintiffs arguing alternate jurisdictional theories. Further, I.R.C. § 7426 affords a plaintiff two forms of relief not generally available in this court, *i. e.*, an injunction against further levy proceedings and the return of the specific property levied on.[20] Plaintiffs seeking these forms of relief will proceed in the district court irrespective of an alternate remedy of money damages in the Court of Claims. Nor is the I.R.C. § 7426(b)(2)(B) remedy of money damages supplanted if similar periods of limitation apply, as we conclude *infra.*[21] Continued jurisdiction in this court does not render I.R.C. § 7426 meaningless. Thus, we cannot infer intended exclusivity.

Indeed, although the matter is hardly clear, we think a contrary inference proper from the clear evolution of proposed section 7431 into I.R.C. § 7426.[22] Proposed section 7431 was not viewed as inconsistent with

its collection activities interfere with their property rights. This includes cases where the Government wrongfully levies on one person's property in attempting to collect from a taxpayer. However, some courts allow suits to be brought against district directors of Internal Revenue where this occurs. Technically, these suits are not against the Government, but, in fact, the Government defends them and pays all costs, so that the effect is practically the same as if these suits were brought against the United States." [H.R.Rep.No.1884, *supra* note 8 at 27, *reprinted in* 1966–2 C.B. at 834; S.Rep. No.1708, *supra* note 8 at 29, *reprinted in* 1966–2 C.B. at 896. We decline, however, to adopt defendant's view of this segment and instead read the legislative history as a whole.

**18.** See cases collected at n.12, *supra.*

**19.** *Brown v. General Services Administration, supra,* is therefore distinguishable. In *Brown,* the legislative history was clear that Congress wished to resolve uncertainty in existing law over remedies for discrimination in public employment. From that factual predicate and the overall structure of the remedy, the Court inferred exclusivity for the 42 U.S.C. § 2000e–16 remedy. Here defendant would have us presume this factual predicate from uncertain legislative history. This we decline to do. *Brown* is also distinguishable, as the text discusses, *infra,* in that the 42 U.S.C. § 2000e–16 remedy is a complete remedy with detailed prerequisites unlike I.R.C. § 7426.

**20.** *See, e. g., United States v. Jones,* 131 U.S. 1, 18, 9 S.Ct. 669, 671, 33 L.Ed. 90 (1889).

**21.** Indeed, depending on the theory argued in this court, the district court's power to award interest under I.R.C. § 7426(g)(1) might provide a powerful incentive to bring an action for money damages in a district court rather than in the Court of Claims. See 28 U.S.C. § 2516.

**22.** See nn.13–15 and accompanying text, *supra.* Even if we did not discern this "clear evolution," the hearing testimony and submission would still be of clear relevance in determining the scope of I.R.C. § 7426. *See, e. g., Hatzlachh Supply Co., supra,* 444 U.S. at 463 & n.4, 100 S.Ct. at 649 & n.4; *cf. Constant v. United States,* 223 Ct.Cl. ——, ——, 617 F.2d 239, 244 (1980) (committee hearings demonstrate that only non-speculative damages are recoverable under 35 U.S.C. § 183).

continued Tucker Act jurisdiction in this court, and we see no reason to view the closely related provisions of I.R.C. § 7426 differently. Congress was apparently well aware that I.R.C. § 7426 would not operate in a vacuum, for the Tax Lien Act detailed the impact of I.R.C. § 7426 on other law. For example, section 110(a) of the Tax Lien Act provided both that an action maintainable under I.R.C. § 7426 could no longer be brought against federal officers individually (I.R.C. § 7426(d)) and that despite I.R.C. § 7422, actions could be maintained without a refund claim (I.R.C. § 7426(f)). Section 110(b) added I.R.C. § 6532(c), providing that I.R.C. § 7426 actions must be commenced within 9 months of the levy rather than the more general 6-year period of 28 U.S.C. § 2401. And section 110(c) amended I.R.C. § 7421 to except I.R.C. § 7426 actions from the normal rule prohibiting suits to restrain collection of the tax. In light of this careful tailoring of I.R.C. § 7426 and other applicable law, it seems unlikely Congress overlooked parallel jurisdiction in this court. We think it more likely Congress saw nothing inconsistent between the essentially equitable relief afforded by I.R.C. § 7426 and the monetary relief available in this court. *Cf. Hoopa Valley Tribe v. United States,* 221 Ct.Cl. ——, ——, 596 F.2d 435, 444 (1979) (equitable actions provided by 1976 amendments to 5 U.S.C. § 702 complement monetary relief in the Court of Claims). We therefore hold Congress did not intend I.R.C. § 7426 to withdraw Tucker Act jurisdiction of third-party levy contests from this court.[23]

### Applicable Period of Limitation

Gordon asserts that third-party levy contests brought under the Tucker Act are governed by the 6-year period of limitation established by 28 U.S.C. § 2501.[24] We disagree. The legislative history on this point is clear that third-party levy contests should be resolved quickly. *See, e. g.,* ABA Final Report, Legislative History, *supra* at 116, 168, 169, 236, 237. *See also United Sand & Gravel Contractors, supra* note 23; W. Plumb, Federal Tax Liens 262 (3d ed. 1972). Congress was clearly concerned that levy contests more than 9 months after the levy would prevent ultimate collection of the tax, thereby endangering the federal treasury. The problems of administration become inordinately more complex after a levy is set aside, for the Government must begin anew to collect the delinquent tax. Physical collection becomes far less likely, as taxpayers may have disappeared or disposed of their assets in the intervening period. Section 110(b) of the Tax Lien Act (presently I.R.C. § 6532(c))[25] addresses the concerns by requiring levy contests to be

---

23. We recognize that at least three other federal appellate courts have spoken of the exclusiveness of the I.R.C. § 7426 remedy. *United Sand & Gravel Contractors, Inc. v. United States,* 624 F.2d 733, 738–739 (5th Cir. 1980); *World Marketing, Ltd. v. Hallam,* 608 F.2d 392, 394 (9th Cir. 1979); *Crow v. Wyoming Timber Products Co.,* 424 F.2d 93, 96 (10th Cir. 1970). Whatever else may be said of the parallel construction of Tucker Act jurisdiction between this court and the district courts, *see Saffron v. Department of the Navy,* 561 F.2d 938, 944 & n.48 (D.C.Cir.1977), we find the conclusory assertions of exclusivity in those cases unhelpful. Although relying on a constitutional theory, one other federal court has concluded that I.R.C. § 7426 does not afford an exclusive remedy. See *Hill v. McMartin,* 432 F.Supp. 99, 102–103 (E.D.Mich.1977).

24. In relevant part, 28 U.S.C. § 2501 provides:
"§ 2501. *Time for filing suit*
"Every claim of which the Court of Claims has jurisdiction shall be barred unless the peti-

tion thereon is filed within six years after such claim first accrues."

25. I.R.C. § 6532(c) provides:
"(c) *Suits by persons other than taxpayers.—*
"(1) General rule.—Except as provided by paragraph (2), no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action.
"(2) Period when claim is filed.—If a request is made for the return of property described in section 6343(b), the 9-month period prescribed in paragraph (1) shall be extended for a period of 12 months from the date of filing of such request or for a period of 6 months from the date of mailing by registered or certified mail by the Secretary or his delegate to the person making such request of a notice of disallowance of the part of the request to which the action relates, whichever is shorter."

made within 9 months of the levy. See *Harvey v. United States*, Ct.Cl. No. 121–80T (order entered January 16, 1981).

These concerns are equally applicable to levy contests in this court. Accordingly, we construe I.R.C. § 6532(c) to implicitly require levy contests under the Tucker Act to be brought within 9 months of levy. Gordon's action, brought more than 16 months after the levy, would appear barred.

To avoid operation of the limitation statute, Gordon asserts that the I.R.C. § 6532(c) period is unconstitutional in that the period is impermissibly short and runs without notice to potential litigants. See I.R.C. §§ 6532(c)(1) and 6331(a).

Normally, Congress is free to establish periods of limitation for special types of actions as it sees fit. *United States v. A. S. Kreider Co.*, 313 U.S. 443, 447, 448 n.3, 61 S.Ct. 1007, 1009, 1010 n.3, 85 L.Ed. 1447 (1941). In seeking a refund of taxes, for example, a taxpayer must ascribe to the period of limitation established by I.R.C. §§ 6511(a) and 6532(a) rather than the general 6-year period of 28 U.S.C. §§ 2501 and 2401. *E. g., Fletcher v. United States*, Ct.Cl. No. 572–79T (order entered January 8, 1981). The question, of course, is whether I.R.C. § 6532(c) is constitutional and therefore within the *Kreider* rule. Apparently, a number of cases have already concluded or assumed that the 9-month period is permissible, even though there are no requirements for notice and even though the period begins on the date of levy. *E. g., United Sand & Gravel Contractors, supra* note 23; *Omnibus Financial Corp. v. United States*, 566 F.2d 1097, 1102–1103 (9th Cir. 1977); *Dieckmann v. United States*, 550

F.2d 622, 623–624 (10th Cir. 1977); *Corwin Consultants, Inc. v. Interpublic Group of Companies, Inc.*, 512 F.2d 605, 611 (2d Cir. 1975); *DeGregory v. United States*, 395 F.Supp. 171, 174 (E.D.Mich.1975); *Stuyvesant Insurance Co. v. Department of Treasury*, 378 F.Supp. 7, 9–11 (S.D.N.Y.1974); *American Honda Motor Co. v. United States*, 363 F.Supp. 988, 992 (S.D.N.Y.1973).

We assume, arguendo, that Gordon's petition states a claim under the just compensation clause.[26] It is hornbook law that a remedy must be provided consistent with the scope of that provision. *See Regional Rail Reorganization Act Cases, supra*, 419 U.S. at 127, 95 S.Ct. at 350; *Yearsley v. Ross Construction Co.*, 309 U.S. 18, 22, 60 S.Ct. 413, 415, 84 L.Ed. 554 (1940). The just compensation clause, however, is not the only constitutional provision bearing on this issue, for the taxing power of Article 1, Section 8, clause 1 is also intimately involved. As a general rule, lawful exercises of the taxing power[27] are not repugnant of other constitutional provisions. *See Brushaber v. Union Pacific Railroad Co.*, 240 U.S. 1, 24, 36 S.Ct. 236, 244, 60 L.Ed. 493 (1916). *See also Pittsburgh v. Alco Parking Corp.*, 417 U.S. 369, 374–375, 94 S.Ct. 2291, 2294, 2295, 41 L.Ed.2d 132 (1974); *Magnano Co. v. Hamilton*, 292 U.S. 40, 44–45, 54 S.Ct. 599, 601, 78 L.Ed. 1109 (1934). On the whole, we think I.R.C. § 6532(c) strikes a reasonable balance between claims under the Fifth Amendment and the taxing power. The obvious congressional concern that allowing such suits after 9 months would handicap efforts to collect the tax cannot be discounted. *See* note 25 and accompanying text, *supra*. Further, those who claim an interest in property are under some duty to

---

**26.** That conclusion is by no means certain. *See Catalina Properties, Inc. v. United States*, 143 Ct.Cl. 657, 166 F.Supp. 763 (1958); *Grayson v. United States*, 144 Ct.Cl. 185 (1958). Although unusual, just compensation claims alleging a taking of currency are sometimes used to contest exercises of the taxing power. *E. g., Acker v. Commissioner*, 258 F.2d 568, 574–575 (6th Cir. 1958), *aff'd on other grounds*, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959); *Universal Exploration Co. v. Davis*, 34 F.Supp. 96 *passim* (N.D.Ala.1940). The usual method is a due process claim. *E. g., United States v. Pittman*,

449 F.2d 623, 626 (7th Cir. 1971); *Hill v. McMartin, supra* note 23. *But see Indus. Bank of Wash. v. Sheve*, 307 F.Supp. 98, 99 (D.D.C. 1969).

**27.** This includes levies to collect delinquent taxes. *Springer v. United States*, 102 U.S. 586, 593–594, 26 L.Ed. 253 (1880); *Phillips v. Commissioner*, 283 U.S. 589, 595–596 & n.5, 51 S.Ct. 608, 611 & n.5, 75 L.Ed. 1289 (1931). *See also Fuentes v. Shevin*, 407 U.S. 67, 90–92, 92 S.Ct. 1983, 1999–2000, 32 L.Ed.2d 556 (1972).

discover contraventions of that interest, and if need be, to defend that which they claim. *See, e. g., Dieckmann, supra; DeGregory, supra; cf. Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 316, 70 S.Ct. 652, 658, 94 L.Ed. 865 (1950) (seizures of property normally afford notice to owner of taking); *Cuyahoga County, Ohio v. United States*, 155 Ct.Cl. 307, 317–318, 294 F.2d 775, 780–781 (1961) (failure of county officials to diligently pursue taking claim requires reduction of possible recovery by one-half). "It is the part of common prudence for all those who have any interest in [a thing] to guard that interest by persons who are in a situation to protect it." *Mullane, supra*, quoting *The Mary*, 13 U.S. (9 Cranch) 126, 144, 3 L.Ed. 678 (1815).[28] We perceive no constitutional infirmities in a requirement that Gordon's claim be asserted within 9 months of levy, and we so hold.

Plaintiff's further contentions require only brief mention. Plaintiff's status as an alien will not toll the statute of limitation. *See, e. g., Japanese War Notes Claimants Association v. United States*, 178 Ct.Cl. 630, 636, 373 F.2d 356, 360, *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967); *Compania Maritima v. United States*, 136 Ct.Cl. 697, 705–707, 145 F.Supp. 935, 940 (1956). The statute is not tolled merely because Gordon was unaware of his claim. The claim was discoverable and the Government made no attempt to obscure it. *Spevack v. United States*, 182 Ct.Cl. 884, 889–890, 390 F.2d 977, 981 (1968); *Japanese War Notes Claimants, supra* 178 Ct.Cl. at 634, 373 F.2d at 358–359. Nor is the statute tolled by plaintiff's incarceration. *O'Callahan v. United States*, 196 Ct.Cl. 556, 563, 451 F.2d 1390, 1393 (1971); *Grisham v. United States*, 183 Ct.Cl. 657, 664, 392 F.2d 980, 984, *cert. denied*, 393 U.S. 843, 89 S.Ct. 125, 21 L.Ed.2d 114 (1968). Plaintiff's further contentions are equally without merit. This claim is time barred.

Accordingly, defendant's motion for summary judgment is granted. The petition is dismissed.

FRIEDMAN, Chief Judge, concurring:

Although I come out the same place the majority does, I get there by a somewhat different route.

1. The apparent rationale of the majority's conclusion that section 110(a) of the Federal Tax Lien Act of 1966 did not restrict our jurisdiction under the Tucker Act to entertain a suit by a nontaxpayer challenging a tax levy upon its property is that (a) Congress was aware of that jurisdiction, and (b) its failure to refer to that jurisdiction reflects an intention not to modify it. The main basis for the first proposition—that Congress was aware of our jurisdiction—is a brief reference in an American Bar Association Committee Report on tax liens to the fact that

> [p]resent decisions also permit one whose money is wrongly seized for another's taxes to sue the United States for its recovery, but the suit must be in the Court of Claims if the amount exceeds $10,000 (although there are also decisions permitting such suit to be brought in the district court, without jurisdictional limit, if the Director is the nominal defendant).

ABA Final Report, Legislative History (see p. 5 n.9, *supra*) 168.

The entire discussion of our jurisdiction over such cases occupies a single paragraph within a 59-page discussion in the report on the broad subject of federal tax liens and levies. The report was introduced at the hearings before the House Ways and Means Committee on the proposed Federal Tax Lien Act, in the drafting of which act the American Bar Association played a major role. There was no discussion of the point either in the committee reports or on the floors of Congress.

I think this brief reference to our decisions is too slender a reed upon which to rest the conclusion that Congress was aware that we had exercised jurisdiction under the Tucker Act over this type of case.

---

**28.** Gordon might have a cause of action against Accredited. *See United Sand & Gravel Contractors, supra* note 23, at 739. *But see DiEd-*

*wardo v. First Nat'l Bank of Bath*, 442 F.Supp. 499, 500 (E.D.Pa.1977).

Rather, I think that a fair reading of the legislative history indicates that Congress was unaware of our decisions and enacted section 110(a) on the mistaken assumption that no other means was available by which a nontaxpayer effectively could challenge a tax levy on his property.

Nevertheless, I agree with the majority that in enacting section 110(a), Congress did not curtail our jurisdiction under the Tucker Act. There is nothing in the language or history of that section indicating that Congress intended that result. Since I believe that Congress was unaware of our Tucker Act jurisdiction in these cases, I do not think Congress should be deemed implicitly to have repealed it *pro tanto* by creating a remedy in the district court, unless there were a clear indication that Congress intended the new remedy to be exclusive. I find nothing to show that Congress had that intention. I think that in enacting section 110(a), Congress merely provided a new nonexclusive remedy for nontaxpayers whose property had been levied upon and left intact our existing jurisdiction under the Tucker Act.

2. The remaining question is whether the 9-month statute of limitations under section 110(a) or the 6-year statute under the Tucker Act applies. This aspect of the case presents the familiar problem of a court attempting to ascertain how the legislature would have dealt with an issue it did not consider if the problem had been called to its attention. The answer depends upon the basic purpose and plan of the statute the legislature enacted.

As the majority states, a major objective of section 110(a) was to insure that "third-party levy contests should be resolved quickly," and the concerns that induced Congress to impose a 9-month limitations period for levy contests in the district court "are equally applicable to levy contests in this court." I conclude that, if Congress had been aware of our Tucker Act jurisdiction over levy challenges by nontaxpayers when it enacted section 110(a) and had considered what limitations period should apply to our cases, it probably would have select-ed the same 9-month period it adopted for district court cases. Accordingly, it is appropriate to apply the 9-month limitations period prescribed in section 110(a) to Tucker Act suits in this court. The plaintiff's petition therefore is untimely and must be dismissed.

3. Throughout this discussion I have assumed *arguendo* that despite the enactment of section 110(a), we would continue to recognize the right of nontaxpayers to bring Tucker Act suits to challenge tax levies on their property. That assumption, however, is dubious. We treat such suits as based upon a breach of a contract implied in fact under which the government agrees to refund to nontaxpayers property of those persons upon which the government improperly has levied. The doctrine apparently was first announced in *Kirkendall v. United States*, 90 Ct.Cl. 606, 31 F.Supp. 766 (1940). Its rationale was as follows:

When the Government has illegally received money which is the property of an innocent citizen and when this money has gone into the Treasury of the United States, there arises an implied contract on the part of the Government to make restitution to the rightful owner under the Tucker Act and this court has jurisdiction to entertain the suit.

90 Ct.Cl. at 613, 31 F.Supp. at 769.

It does not follow, however, that there is a contract implied in fact where, as now, a nontaxpayer may recover property improperly levied upon through timely suit in the district court. In this situation it seems unlikely that the government also has agreed to make restitution to the nontaxpayer under an implied contract, which may be sued upon in this court. An important reason for the *Kirkendall* decision, although not explicitly set forth in the opinion, would appear to be that unless there were such a contract implied in fact, there might be no method by which the nontaxpayer effectively could recover the property the government improperly had taken from him through a levy. With the enactment of section 110(a), however, that situation no longer exists. *Cf. Fletcher v. United*

*States*, Ct.Cl. No. 572–79T, order entered December 31, 1980.

In view of our disposition of this case, there is no occasion here to reach this issue, which neither party has addressed. I discuss it only because it seems important to point out that, if and when the court faces the issue, it may conclude that *Kirkendall* no longer is viable.